UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/28/2026

KEVIN RAZZOLI,

                Plaintiff,

      -v-

ASR XPRESS, et al.,

              Defendants.

------------------------------------------------------------------------X

25-cv-6307 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendants Hunts Point Public Safety, Cmdr. Poole, Joy Harris, Nick Rodelli, and Capt. Clarke ("the Hunts Point Defendants") move, pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6), to dismiss the amended complaint of Plaintiff Kevin Razzoli ("Plaintiff"). Dkt. No. 102. Defendant Total Quality Logistics, LLC ("TQL," and, with the Hunts Point Defendants, "Defendants"), similarly moves to dismiss Plaintiff's complaint pursuant to Rules 8 and 12(b)(6). Dkt. No. 181. For the reasons that follow, the motions are granted.

## BACKGROUND

A court, on a motion to dismiss, accepts "as true all material factual allegations in the complaint," *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004), "constru[ing] all reasonable inferences in the non-movant's favor," *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021). Additionally, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). Where, as

here, a plaintiff is a repeat litigant, his claims are entitled to "less deference than most pro se

litigants because of [his] extensive litigation history." *Buxbaum v. Webull Fin., LLC*, 2025 WL

3949816, at *4 (S.D.N.Y. Nov. 13, 2025) (citation omitted); *see also Tracy v. Freshwater*, 623

F.3d 90, 103 (2d Cir. 2010) (explaining that, when considering "what degree of solicitude, if any,

should be afforded" to a pro se litigant, courts should base their decision on "the totality of the

relevant circumstances").[1]  Although Plaintiff is entitled to somewhat less deference, that is

ultimately immaterial to the Court's decision.  The following facts are drawn from Plaintiff's

original and amended complaints.[2]

Plaintiff alleges that he contracted with TQL to transport seven hundred boxes of celery

---

[1] *See, e.g.*, *Razzoli v. Richmond Univ. Med. Ctr.*, 2023 WL 7017105 (E.D.N.Y. Oct. 25, 2023) (dismissing in part claims brought by Plaintiff against a medical center and several doctors under 42 U.S.C. § 1983, civil RICO, and the Privacy Act); *Razzoli v. USDA*, 2022 WL 17852024 (E.D.N.Y. Dec. 22, 2022) (dismissing claims brought by Plaintiff against, among others, public safety officers working at the Hunts Point Terminal Market); *Razzoli v. City of New York*, 2022 WL 2066109 (S.D.N.Y. June 8, 2022) (dismissing claims brought by Plaintiff under 42 U.S.C. § 1983 against, among others, Hunts Point Co-Op); *Razzoli v. U.S. Att'y Exec. Off.*, 2021 WL 4254996 (S.D.N.Y. Sept. 17, 2021) (dismissing claims brought by Plaintiff against numerous parties under the Freedom of Information Act and the U.S. Constitution); *Razzoli v. Black Lives Matter & Members*, 2021 WL 2322346 (S.D.N.Y. June 7, 2021) (dismissing claims brought by Plaintiff under the Constitution and civil RICO).

[2] While "an amended pleading ordinarily supersedes the original," *Hancock v. County of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018) (quoting *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000)), "the Court may still credit admissions in the original pleading and attached exhibits," *Poindexter v. EMI Rec. Grp. Inc.*, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (citing *Sulton v. Wright*, 65 F. Supp. 2d 292, 295 (S.D.N.Y. 2003)); *see also Donhauser v. Goord*, 314 F. Supp. 2d 119, 212 (N.D.N.Y. 2021) (noting that "in cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the [operative] complaint to the extent that they are consistent with the allegations in the [operative] complaint," and collecting cases holding similarly).  Therefore, "given Plaintiff's *pro se* status, the Court will consider facts from the Plaintiff's [original] complaint that have not been repeated in the [a]mended [c]omplaint." *Briggs v. SCO Fam. of Servs.*, 2021 WL 7209010, at *2 (E.D.N.Y. Oct. 20, 2021) (cleaned up) (quoting *Washington v. Westchester Cnty. Dep't of Corr.*, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015)); *accord Dimitri v. Velie*, 2026 WL 850690, at *3 (N.D.N.Y. Mar. 27, 2026).

by truck from California to Brooklyn Terminal Market.[3]  Dkt. No. 1 at 8.  The transportation of the goods was then handled by terminated defendant A.S.R. Express, LLC ("ASR") pursuant to a contract with TQL.  *Id.*  The celery was to be delivered on June 27, 2024.[4]  *Id.*  The driver of the truck, who worked for ASR, failed to secure the celery with "load locks" in contravention of a contract, and the celery was allegedly damaged.[5]  *Id.* at 9.  Plaintiff has attached to his amended complaint images of boxes inside of a shipping truck that have been disturbed.  *Id.* at 19–24.

On June 29 and 30, 2024,[6] employees of Hunts Point Terminal Market in the Bronx "impeded" Plaintiff and "[r]efuse[d] [him] [e]ntry" to the market, preventing him from reviewing his damaged produce.  Dkt. No. 1 at 10; Dkt. No. 80 at 5.

Throughout his pleadings, Plaintiff invokes several different legal claims and theories. Plaintiff cites, variously, to the Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments of the U.S. Constitution, *see* Dkt. No. 1 at 11; Dkt. No. 80 at 4–6; the civil RICO statute, *id.* at 5; the New York Human Rights laws, *id*; the federal Privacy Act; the federal Freedom of Information Act ("FOIA"), *id.*; and the New York Penal Law § 210.15, Dkt. No. 1 at 3–4.

### PROCEDURAL HISTORY

---

[3] It is unclear whether Plaintiff meant to refer to the Hunts Point Terminal Market, which is in the Bronx, or whether the shipment of celery was bound for Brooklyn, in which case he has not alleged why it was ultimately received at Hunts Point.

[4] Plaintiff states that the shipment was due on "July 27, 2024," but from the other dates listed in the complaint, the Court assumes that this is a typographical error.  Dkt. No. 1 at 8.  The difference is immaterial.

[5] Plaintiff does not attach this contract as an exhibit to either his original complaint or amended complaint.  It is also unclear whether this contract was between himself and TQL, or between TQL and ASR.  *See* Dkt. No. 1 at 6.

[6] Plaintiff refers to the incident taking place in both in the evening and morning of June 29 and June 30.  *Compare* Dkt. No. 1 at 9 ("on June 30, 2024 . . ."); *id.* at 10 ("on the Evening of June 30, 2024 . . ."), *with* Dkt. No. 80 at 5 ("on or Before the Even & Morning of June 29th and 30th 2024 . . .").  The exact date of the incident is immaterial.

3

Plaintiff initiated this case *pro se* by complaint filed on July 28, 2025.  Dkt. No. 1.  He named "A.S.R. Xpress Inc.," "TQL LOGISTICS," and "10 Hunts Point Public Safety OFFICIALS" as Defendants.  *Id.*

On December 4, 2025, Plaintiff filed the amended complaint.  Dkt. No. 80.  He named "T.Q.L. Logistics," "Hunts Point Public Safety," "Nick Rodelli," "Joy Harris," "Capt. Clarke," "Cmdr. Poole," and six John Does as Defendants.  *Id.*[7]  On December 23, 2025, the Hunts Point Defendants filed their motion to dismiss with an attorney declaration and a memorandum of law in support of the motion.  Dkt. No. 102.  Plaintiff filed an opposition to the motion to dismiss on December 29, 2025 and January 12, 2026.  Dkt. Nos. 108, 112.  The Hunts Point Defendants filed a reply memorandum in further support of the motion to dismiss on January 20, 2026.  Dkt. No. 116.  Plaintiff filed a traverse in opposition to the motion to dismiss on February 2, 2026.  Dkt. No. 124.

TQL filed its motion to dismiss on April 13, 2026.  Dkt. No. 181.  It also filed a memorandum of law in support of the motion and the declarations of Marc Bostwick and M. Todd Parker.  Dkt. Nos. 182–84.  Plaintiff responded on April 21, 2026.  Dkt. No. 191.  TQL filed a reply memorandum of law on May 5, 2026.  Dkt. No. 201.

On April 15, 2026, Plaintiff submitted a motion to supplement his pleadings.  Dkt. Nos. 186, 188–89.  Defendants opposed the request.  Dkt. Nos. 207–08.  Magistrate Judge Ricardo denied Plaintiff's motion on the basis that he had not "set out any transaction, occurrence, or event that happened after the date of the pleading."  Dkt. No. 210 at 3 (quoting Fed. R. Civ. P.

---

[7] "A.S.R. Xpress Inc.," or, as it is properly known, A.S.R. Express, LLC, was not named as a defendant in the amended complaint because Plaintiff reached a settlement with it before filing. Dkt. Nos. 77–79.

15(d)).[8]

Plaintiff seeks $35 million dollars in damages from the Hunts Point Defendants and does not state what damages he seeks from TQL.  Dkt. No. 1 at 11–12.

### LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the material facts as alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (quoting *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994)).  However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court need not accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555.  After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "A complaint fails to comply with Rule 8(a)(2) if it is 'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003) (summary order) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)); *see Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (holding that complaint did not comply with Rule 8

---

[8] The Court has independently reviewed Plaintiff's motion to supplement his pleadings and concurs with Magistrate Judge Ricardo's conclusion that the motion lacked merit.

because "it contained a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension"). Rule 8 "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged," but it does require, "at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (citation and quotation marks omitted).

"The Court is obligated to construe pro se pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest." *Brock v. Zuckerberg*, 2021 WL 2650070, at *2 (S.D.N.Y. June 25, 2021) (citing *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007)); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000). This does not relieve *pro se* plaintiffs of the requirement that they plead enough facts to "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Nor does it relieve them of the obligation to otherwise comply with the pleading standards set forth by the Federal Rules of Civil Procedure. *See Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007); *see also Locicero v. O'Connell*, 419 F. Supp. 2d 521, 525 (S.D.N.Y. 2006) (requiring that pro se litigants allege sufficient facts to indicate deprivation of a constitutional right).

## DISCUSSION

### I.    Federal Rule of Civil Procedure 8(a)(2)

Both TQL and the Hunts Point Defendants argue that the Complaint should be dismissed for failure to follow the requirement set out in Rule 8(a)(2) that the complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Dkt. No. 1023 at 7–8 (citing Fed. R. Civ. P. 8(a)(2)); Dkt. No. 181 at 6–7 (same).

6

The totality of Plaintiff's allegations with respect to TQL is contained in his original complaint.  Plaintiff alleges that he "negotiated Contract with TQL Logistics Brennan Phar to be picked up on or about June 23 and maintain 24 degree temp. and arrive at Circus Fruit Inc. Brooklyn Terminal Market, Brooklyn NY no [later than 8am] Sunday."  Dkt. No. 1 at 6.  He continues that the "Driver of ASR XPRESS Corp/Contracted by TQL Logistics Also [failed to maintain contract made with TQL] to maintain use of '2 load locks' . . . such did not occur, TQL has their signed contract to prove 'gross negligence' on the part of ASR XPRESS Corp."  *Id.*  In listing the damages sought, Plaintiff seeks damages only from the Hunts Point Defendants and ASR, but not from TQL.  *Id.* at 11–12.  Interpreted with the solicitude due to Plaintiff, Plaintiff contacted TQL to arrange a shipment of goods, but ASR ultimately shipped the goods pursuant to a contract either between TQL and ASR or TQL and Plaintiff.

As to the Hunts Point Defendants, generously construed, Plaintiff has alleged that said defendants denied him entry to the marketplace to inspect the damaged produce.  Dkt. No. 1 at 9.  Their conduct, he alleges, makes them liable "for some of the damages and loss of sales profit."  *Id.*; *see also* Dkt. No. 80 at 6.

Dismissal under Rule 8(a)(2) is "reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  *Salahuddin*, 861 F.2d at 42; *see also Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019); *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 284 (S.D.N.Y. 2024).  If the court dismisses a complaint under Rule 8, "it should generally give the plaintiff leave to amend."  *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995).  Although the allegations as to TQL are sparse and not entirely clear, they are not so vague and unintelligible as to require dismissal on this basis.  That the claim against TQL may not ultimately state a claim for relief is grounds for

dismissal under Rule 12(b)(6), rather than Rule 8.  *See Collins*, 721 F. Supp. 3d at 284–85 ("[E]ven when a complaint is sufficient to meet Rule 8(a)'s formal notice requirements, it will nonetheless be dismissed under Rule 12(b)(6) if the conduct alleged does not give rise to a violation of law." (citation omitted)).  The same is true for the claims against the Hunts Point Defendants—the pleadings, although confused, are not so unclear that the Court cannot ascertain the conduct for which Plaintiff seeks recourse.  Whether that recourse is ultimately available is not proper grounds for dismissal under Rule 8.

## II.    Constitutional Claims

In his pleadings, Plaintiff seeks relief pursuant to the Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments of the U.S. Constitution.  Dkt. No. 1 at 11; Dkt. No. 80 at 4, 5,6.  The Court construes Plaintiff's allegations that the Defendants violated his federal constitutional rights as claims under 42 U.S.C. § 1983, the vehicle through which persons can bring actions to remedy constitutional violations.

Section 1983 provides that an action may be maintained against a "person" who has deprived another of rights independently secured by the "Constitution and laws."  42 U.S.C. § 1983.  To successfully plead a Section 1983 claim, a plaintiff must allege two elements.  First, "the conduct complained of must have been committed by a person acting under color of state law."  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).  Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States."  *Id.*  "[T]]he actions of nominally private entities are attributable to the state when those actions meet one of three tests":

> (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the state," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test");

8

or (3) when the entity "has been delegated a public function by the state," ("the public function test").

*Abadi v. Am. Airlines, Inc.*, 2024 WL 1346437, at *18–19 (S.D.N.Y. Mar. 29, 2024) (alterations adopted) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). "The fundamental question under each test is whether the private entity's challenged actions are fairly attributable to the state." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

Plaintiff does not allege that the Defendants acted "under color of any statute, ordinance, regulation, custom, or usage" of New York State. 42 U.S.C. § 1983. Nor is there any fair inference to be drawn from Plaintiff's pleadings that the Defendants were in fact acting under color of state law—all appear to be private parties. Plaintiff's Section 1983 claims are therefore dismissed. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law.").

## III. RICO

Plaintiff alleges that the Defendants subjected him to a "CIVIL RICO VIOLATION," which the Court construes as a claim for damages under the civil provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c). Dkt. No. 80 at 5. The civil RICO provision allows "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] . . . [to] sue . . . in any appropriate United States district court and . . . recover threefold the damages[.]" 18 U.S.C. § 1964(c). In order to state a violation of section 1962, and thus, a claim under the civil RICO enforcement provision, a plaintiff must allege facts showing: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains

9

an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting 18 U.S.C. § 1962(a)–(c)).

Because RICO "contemplate[s] that a person violates the statute by conducting an enterprise through a pattern of criminality," *Cruz v. FX DirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013), a plaintiff must also plead "the existence of two distinct entities: (a) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name," *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017) (quoting *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 61 (2001)). A RICO enterprise "is a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009). It must have at least three structural features: (1) "a purpose," (2) "relationships among those associated with the enterprise," and (3) "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.*

To establish a pattern of racketeering activity, a plaintiff "must demonstrate, as to each defendant, that while employed by or associated with an enterprise . . . through the commission of at least two predicate acts constituting a pattern of racketeering, the defendant directly or indirectly conducted or participated in the conduct of the affairs of such enterprise." *AFSCME Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 344 (S.D.N.Y. 2013). To show such a pattern, the plaintiff must plead "at least two predicate racketeering acts that amount to or pose a threat of continued criminal activity, and are . . . related both to each other ('horizontal' relatedness), and to the enterprise ('vertical' relatedness)." *United States v. Laurent*, 33 F.4th 63, 75 (2d Cir. 2022). The two predicate acts must have been committed within ten years of each other. 18 U.S.C. § 1961(5). "Predicate acts

10

are 'related' for RICO purposes when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)). Racketeering activities must "amount to or pose a threat of continued criminal activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) (quoting *H.J.*, 492 U.S. at 239). To meet this so-called "continuity" requirement, a "plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004) (quoting *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995)).

To state a claim of a civil RICO conspiracy under § 1962(d), a plaintiff must allege facts showing that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999). A plaintiff must also show that "if the agreed upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *Id.* at 244–45.

Plaintiff does not provide any facts that would support a substantive civil RICO claim or a RICO conspiracy claim. At most, he alleges that he had a contract with TQL that in turn worked with ASR to deliver goods to Plaintiff, and that the delivery of those goods failed, and that he then had a one-off dispute with the Hunts Point Defendants with respect to his ability to

11

inspect that failed delivery.  Even construed generously, these allegations do not establish the existence either of a RICO enterprise or of any pattern of racketeering activity.  *See Moss*, 729 F.2d at 17; *see also Malek v. AXA Equitable Life Ins. Co.*, 2023 WL 2682408, at \*15–16 (E.D.N.Y. Mar. 29, 2023) (dismissing RICO claim where the complaint was "devoid of factual allegations regarding any relationship that the [] defendants had with one another," in that it did not allege that they "communicated with one another, coordinated with one another, or maintained interpersonal relationships with one another"); *Tang v. Qiao*, 2024 WL 4266006, at \*6–7 (S.D.N.Y. Sept. 23, 2024).  Therefore, Plaintiff has not stated a claim against the Defendants under the civil RICO statute.

## IV.    Privacy Act and FOIA

To the extent Plaintiff intends to invoke the Privacy Act and the Freedom of Information Act ("FOIA"), *see* Dkt. No. 80 at 3 (citing 5 U.S.C. § 522(a)(g)(1)(c); then *id.* § 522a(g)(4); and then *id.* § 522a(e)(5)), he fails to state a claim for relief.  The Defendants are not agencies of the federal government and are not subject to either law.  *See Pennyfeather v. Tessler*, 431 F.3d 54, 56 (2d Cir. 2005) (affirming dismissal of Privacy Act and FOIA claims "because those statutes apply only to agencies of the federal government"); *Grant Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 484 (2d Cir. 1999).

## V.    State Law Claims

Plaintiff also references in his pleadings the "NY HUMAN RIGHTS LAWS," Dkt. No. 1 at 11, the "NYC Human Rights Laws," Dkt. No. 80 at 5, the New York Penal Law § 210.15, CPLR Part 202, and New York City Practice Law R3124, *id.* at 4.  The Court interprets his reference to the New York and New York City Human Rights Laws as an invocation of N.Y. Exec. Law § 290 *et seq.* and N.Y.C. Admin. Code § 8-107 *et seq.*, respectively.

This Court has supplemental jurisdiction only over state-law claims "that are so related to

12

claims in the action within such original jurisdiction that they form part of the same case or

controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  As noted

by the Supreme Court when discussing Section 1367's predecessor doctrine, supplemental

jurisdiction is traditionally "a doctrine of discretion, not of plaintiff's right."  *United Mine

Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Kolari v. N.Y.-Presbyterian Hosp.*, 455

F.3d 118, 122 (2d Cir. 2006).  Subsection (c) of § 1367 says that a district court "may decline to

exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original

jurisdiction," thus confirming that such jurisdiction is discretionary.  28 U.S.C. § 1367(c)(3); *see

City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

To determine whether to exercise supplemental jurisdiction under Section 1367(c)(3), a

district court balances the traditional "values of judicial economy, convenience, fairness, and

comity."  *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Itar-Tass Russian

News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 446–47 (2d Cir. 1998).  The Supreme Court

in *Cohill* provided additional guidance for district courts in pre-trial contexts, noting that "in the

usual case in which all federal-law claims are eliminated before trial, the balance of factors . . .

will point toward declining to exercise jurisdiction over the remaining state-law claims."  484

U.S. at 350 n. 7; *see Kolari*, 455 F.3d 118 at 122; *see also TPTCC NY, Inc. v. Radiation Therapy

Servs., Inc.*, 453 F. App'x 105, 107 (2d Cir. 2011) (summary order) ("Although there is no

'mandatory rule to be applied inflexibly in all cases,' it is clear that 'in the usual case in which all

federal-law claims are eliminated before trial,' the balance of factors will weigh in favor of

declining to exercise supplemental jurisdiction." (quoting *Cohill*, 484 U.S. at 350)).  "The

Second Circuit takes a particularly strong view that the district courts should decline to exercise

supplemental jurisdiction in the absence of a 'clearly articulated federal interest.'"  *Cummings v.*

13

*City of New York*, 2021 WL 1664421, at \*2 (S.D.N.Y. Apr. 28, 2021) (quoting *Kolari*, 455 F.3d at 123).

In the instant case, where the Court has dismissed Plaintiff's federal claims against all the remaining Defendants, the relevant factors all point in favor of declining supplemental jurisdiction.  Primarily, at the pleading stage, there would be nothing gained in terms of judicial economy, convenience, fairness, or comity.  "The court is no more familiar with the facts and legal issues of this case than any court would be at the pleading stage.  As a result, the Court lacks any interest in continuing to preside of the resolution of state law claims, and resolution of the state law claims in state court will avoid 'needless decisions of state law' by a federal court." *Cummings*, 2021 WL 1664421, at \*3 (quoting *Gibbs*, 383 U.S. at 726); *see Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendant jurisdiction over remaining state law claims."); *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (same).

The Court therefore declines supplemental jurisdiction over Plaintiff's state law claims. *See Maiorino v. N.Y.C. Dep't of Sanitation*, 2025 WL 2928902, at \*9 (S.D.N.Y. Oct. 15, 2025).[9]

## VI.    Leave to Amend

"Generally, 'a *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid

---

[9] In his pleadings, Plaintiff also appears to invoke the Uniform Commercial Code (the "UCC"). Dkt. No. 1 at 8.  The UCC "is not a federal law or any other binding statutory body whatsoever; it is an aggregated statutory model, whose provisions may be codified by individual states and does not provide a basis for jurisdiction." *Hall v. Select Portfolio Servicing Inc.*, 2025 WL 1042339, at \*8 (S.D.N.Y. Jan. 14, 2025) (citation omitted).  To the extent these claims could be construed as one for breach of contract, those are state law claims over which the Court will not exercise supplemental jurisdiction for the reasons elaborated in this Opinion.

claim might be stated.'" *Obot v. Sallie Mae*, 602 F. App'x 844, 846 (2d Cir. 2015) (summary order) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)). "Repleading is futile," though, "when 'the problem with the plaintiff's cause of action is substantive' and 'better pleading will not cure it.'" *Razzoli v. City of New York*, 2022 WL 2066109, at *2 (S.D.N.Y. Jun. 8, 2022) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). There is no indication that Plaintiff could state a claim under Section 1983, RICO, the Privacy Act, or FOIA in an amended pleading. To the contrary, the fundamental issues with Plaintiff's allegations indicate that relief is not available to him under the federal causes of action. Furthermore, Plaintiff has already amended his complaint; the Court here is considering both his original complaint and his amended complaint. The Court also has considered the materials submitted with Plaintiff's motion to supplement the pleadings. The content of Plaintiff's pleadings and numerous filings does not give the Court any reason to believe that "the defects in Plaintiff's complaint[s] [would] be cured with an amendment." *Razzoli v. Black Lives Matter & Members*, 2021 WL 2322346, at *4 (S.D.N.Y. June 7, 2021). Therefore, the Court declines to grant Plaintiff leave to amend his complaint.[10]

### CONCLUSION

The motion to dismiss is GRANTED. Plaintiff's federal clams are dismissed with

---

[10] In his response to the Hunt Point Defendants' motion to dismiss, Plaintiff states that the law firm representing those Defendants, Kaufman Borgeest & Ryan LLP, should be disqualified because they previously represented the same defendants previously. Dkt. No. 112 at 14. In their reply brief, Defendants acknowledge that the firm has previously represented Hunts Point in other matters. Plaintiff does not explain why counsel's prior representation of the same party should result in disqualification. Contrary to his assertion, disqualification may be available on the basis of past representation only where the moving party shoes that it was previously represented by the subject attorney, that there is a "substantial relationship between the subject matter" of that prior representation and the current litigation, and that the attorney it seeks to disqualify had or was likely to have access to "relevant privileged information" while representing it. *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239 (2d Cir. 2016).

prejudice.  Plaintiff's state law claims are dismissed for lack of jurisdiction and without prejudice to refiling in state court.  The Clerk of Court is respectfully requested to close Dkt. Nos. 102 and 181, and to close the case.

SO ORDERED.

Dated: May 28, 2026
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge